UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**BRETT PERCLE**                                   **CIVIL ACTION**

**VERSUS**                                          **NO.   14-449-SDD-RLB**

**THE CITY OF BATON ROUGE, ET AL.**

**PRE-HEARING MEMORANDUM**

**MAY IT PLEASE THE COURT:**

Plaintiff, Brett Percle, and undersigned counsel, Kearney Loughlin, submit the instant pre-hearing memorandum. On March 1, 2016, the Court conducted a conference with counsel regarding a WAFB news story that appeared the day before. R. Doc. 55. The Court indicated that Percle and/or Loughlin could be sanctioned in the amount of the increased cost of an expanded jury venire (of forty prospective jurors instead of the usual venire of twenty to twenty-five) caused by the WAFB story. The Court set a hearing for March 3, 2016 (R. Doc. 56), ordering plaintiff's counsel to show cause why he should not be sanctioned for violating Rule of Professional Conduct 3.6 which provides in part as follows:

> **Rule 3.6. Trial Publicity**
>
> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.
>
> (b) **Notwithstanding** paragraph (a), a lawyer may state:
>
> (1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
>
> (2) information contained in a public record;

* * *

> (c) **Notwithstanding** paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

Louisiana Rule of Professional Conduct 3.6(a), (b)(1)-(2), and (c) (emphasis added).

The information provided by Percle and Loughlin in the news story is the same information found in the public record of this case, in the case of *Bricker v. Moruzzi*, No. 14-478-BAJ-RLB, in other public records, and in numerous other news stories, including a WAFB story in which defendant Dabadie commented on Moruzzi's work history, disciplinary history, and fitness to be a Baton Rouge Police Officer in general and a member of the Special Response Team in particular. Despite the news coverage, there is no presumption that the venire has been materially prejudiced as a matter of law and any possible prejudice is substantially unlikely as a matter of fact.

**I.       Material prejudice of the venire is <u>not</u> substantially likely.**

In *Carter v. Chicago Police Officers*, 1996 WL 446756 (N.D. Ill. 1996), plaintiff's counsel in a Section 1983 case told a Chicago Tribune newspaper reporter (Eric Zorn) two days before trial that defendants had offered to settle for $350,000. *Carter*, 1996 WL 446756 at *1. "The result of this conversation was a newspaper column which appeared on the first page of the Chicagoland Section of the Sunday Chicago Tribune, a newspaper with a Sunday circulation of over 1,000,000,000 people. . . . This particular issue was sold on May 4 and 5, 1996 – the two days immediately preceding the jury selection in this case." *Ibid*. Although the *Carter* court observed that "[a] strong argument could be made that potential jurors who became aware of the defendant's pretrial offer to settle this lawsuit for $350,000 would be likely to view this amount as the minimum amount of damages to be awarded in this case[,]" *ibid.*, the story did not prejudice the

2

venire at all:

> Perhaps because we live in a busy world with limited reading opportunity, **only one of the over forty prospective jurors used in this case ever acknowledged reading the Sunday Tribune Zorn article**. Furthermore, the one person who did acknowledge reading this article was not selected as a juror. Thus, the Court is fully satisfied that the trial of this lawsuit was not affected by Mr. Zorn's article.

*Id.* at *2 (emphasis added).

In *Carter*, defendants argued that plaintiff's counsel violated Illinios's Rule 3.6. but the court denied defendants the relief they sought – the denial of plaintiff's fee petition. *Id.* at *2. The court seemed to agree that there was a Rule 3.6 violation but expressly discussed how the violation was nearly avoided:  The court pointed out that "specific information about the defendants' pretrial offer to settle this lawsuit for $350,000" was properly included in plaintiff's Final Pretrial Order as required by the court's rule. *Id.* at *1.  Nevertheless, plaintiff's counsel "missed the 4:30 deadline imposed by the Clerk's Office and instead informally left an **unfiled** copy with this Court's chambers." *Id.* at *1 (emphasis added).  Had plaintiff's counsel in *Carter* actually filed the Final Pretrial Order into the record, Rule 3.6(b)(2) would have applied, allowing the lawyer to state "information contained in a public record" **notwithstanding** any substantial likelihood of materially prejudicing the case.   In this case, everything the undersigned discussed with WAFB is contained in the public record of the *Bricker* case, this case, and in numerous news stories discussing Moruzzi and his history.   None of it is unduly prejudicial in any event.

**II.      Moruzzi's history has been the subject of numerous news stories.**

Since the *Carter* case in 1996, the means of public communication have expanded greatly, to include hundreds of cable and broadcast television channels, internet websites, listservs, blogs, interactive electronic forums, Facebook and other social media, in addition to talk radio, and traditional newspapers and print media.   The likelihood that a prospective juror will be exposed to

any given story in these various media – much less be prejudiced by it – is increasingly remote.

In this case, Loughlin learned about Moruzzi's history not through the discovery process but by deliberately searching for such information on the internet, PACER, and other databases. Among the numerous online reports are the following:

A collection of news reports of Moruzzi's arrest and his subsequent termination as a Baton Rouge Police officer - http://www.zoominfo.com/p/Robert-Moruzzi/1418808550

A blog report of Moruzzi's arrest - https://politivore.wordpress.com/tag/abuse-of-power/

A contemporaneous WAFB story, "POLICE REPORT: BR Officer involved in Bond issue brawl" - http://www.wafb.com/Global/story.asp?S=11502339

A December 2014 Advocate Story regarding Moruzzi and the *Bricker* and *Percle* cases - http://www.wafb.com/Global/story.asp?S=11502339.

The Advocate story (**EXHIBIT A**) began with the sub-headline "Moruzzi was fired, rehired after fight downtown in 2009," and then reported that Moruzzi "has been accused in recent lawsuits of using excessive force in two separate incidents." *Id*. The story also noted that colleagues describe Moruzzi "as a model police officer" and that "Moruzzi has done the job of an officer better than the guy next to him for years[.]" *Id*. The story also included a statement by a police department spokeswoman ostensibly speaking generally about SRT but implying that Percle did "not follow verbal instruction or [was] noncompliant." *Id*.

WAFB later ran another story about Moruzzi and his history– http://www.wafb.com/story/30387344/the-investigators-forced-to-settle (**EXHIBIT B**). Undersigned counsel was unaware of the story until WAFB producer Matt Stanley called on February 16, 2016, indicating that he was following the *Percle* case and was preparing a follow-up story. Stanley emailed a link to the earlier story and Percle and Loughlin agreed to speak about matters in the public record that addressed the same issues discussed by Chief Dabadie. In the

earlier story, "Forced to settle," WAFB had again reported that Moruzzi was fired after a bar brawl and later rehired.   As to Moruzzi's fitness for duty, Dabadie told WAFB, "He served his time, did his part, and now he is able to apply for things that he qualifies for."   Regarding complaints against officers, Dabadie said, "we do an all-out investigation with internal affairs on incidents that we feel need to be investigated."

The participation by Percle and Loughlin in the recent WAFB story – **in which repeated Dabadie's statement about Moruzzi's qualifications** - did no more than give Percle's side of the story using information in the public record and in the public realm.   The "substantial likelihood of materially prejudicing an adjudicative proceeding" standard does not apply to such information.  Rule 3.6(b).   Even if it did, pretrial publicity must be ongoing, pervasive, and pervasively prejudicial before it can cause material prejudice as a matter of law.  *Skilling v. U.S.*, 561 U.S. 358 (2010) (regarding prosecutions related to the Enron bankruptcy); *Calley v. Callaway*, 519 F.2d 184 (5th Cir. 1975) (regarding negative publicity about the My Lai Massacre).   None of the information provided to WAFB by Percle, Loughlin, or Dabadie meets this standard.

> Respectfully submitted:
>
> /s/ Kearney S. Loughlin
> KEARNEY S. LOUGHLIN
> La. State Bar No. 26391
> 6030 Prytania Street
> New Orleans, Louisiana 70118
> Telephone:    (504) 891-3193
> Facsimile:    (504) 891-3195
> **Attorney for Plaintiff, Brett Percle**

CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record via U.S. Mail, postage prepaid and properly addressed, by hand, by electronic transmission though the Court's CM/ECF system, or by facsimile transmission, this 2nd day of March 2016.

s/ Kearney S. Loughlin